**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JUAN RAMON MARROQUIN ALAS;**
**MARINA BALTAZAR; CLARA ESTELA**
**FUENTES LUX; VICTOR MARROQUIN;**
**MIGUEL PEREZ ORTIZ, on behalf of**
**themselves and others similarly situated,**

         **Plaintiffs,**

  **vs.**           **5:15-cv-00441**
                **(MAD/TWD)**

**CHAMPLAIN VALLEY SPECIALTY OF**
**NEW YORK, INC.; JEREMY DYGERT;**
**RUTHANNE DYGERT; CHRISTOPHER**
**COTY; and RACHEL DYGERT COTY,**

          **Defendants.**
_____

**APPEARANCES:**      **OF COUNSEL:**

**BEESON, TAYER & BODINE, APC**  **TEAGUE P. PATERSON, ESQ.**
217 South Salina Street, Suite 600  **DALISAI S. NISPEROS, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiffs

**WINSTON & STRAWN, LLP**   **STEPHEN LOUIS SHEINFELD, ESQ.**
New York Office
200 Park Avenue
New York, New York 10166
Attorney for Defendants


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

  On April 13, 2015, Plaintiffs Juan Ramon Marroquin Alas, Marina Baltazar Clara Estela

Fuentes Lux, Victor Marroquin, Miguel Perez Ortiz (collectively "Plaintiffs") commenced this

action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and others similarly situated, for

violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.  See* Dkt. No. 1.

Plaintiffs also allege that Defendants violated New York Labor Law ("Labor Law") § 650 *et seq.*

*See id.*  At the November 16, 2015 mediation, the parties were able to reach a class settlement of

all claims subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil

Procedure.  *See* Dkt. Nos. 31, 32.  Plaintiff moved for preliminary approval of the class action

settlement, conditional class certification for settlement, appointment of class representative for

settlement, appointment of class counsel for settlement, approval of notice to class and claim

form, and setting of final approval hearing.  *See* Dkt. No. 38.  The Court granted Plaintiffs'

motion.  *See* Dkt. No. 39.  On June 9, 2016, the Court held a fairness hearing.  Currently before

the Court is Plaintiffs' unopposed motion for final approval of class action settlement,

certification of settlement class, approval of the FLSA settlement, and award of attorney fees and

costs.  *See* Dkt. No. 40.

## II. BACKGROUND

Defendant Champlain Valley Specialty of New York, Inc. ("Champlain") is a legal entity

incorporated under the laws of the State of New York.  *See* Dkt. No. 1 at ¶ 11.  The remaining

individually named Defendants are the owners, officers, and managers of Champlain.  *See id.* at ¶

12.  Plaintiffs allege that, as hourly employees of Defendants' apple-slice processing facility, they

were not paid the prevailing minimum wage for all the hours that they worked nor were they paid

an overtime rate of one and one-half times the regular rate of pay for all unpaid hours worked in

excess of forty hours per week.  *See* Dkt. No. 1.  Plaintiffs allege that this practice occurred from

April 14, 2012 through the final disposition of this action.  *See id.*  The complaint alleges, among

other things, that these practices were a violation of FLSA and the Labor Law.  *See id.*  Plaintiffs

brought this case on behalf of themselves and those similarly situated.  *See id.*  The Court

appointed the named Plaintiffs as class representatives, appointed Teague P. Paterson and Beeson, Tayer & Bodine, APC, as class counsel, and authorized notice to all class members. Dkt. No. 38 at ¶¶ 21-31.

At a mediation held on November 16, 2015, the parties were able to reach a settlement of this matter. *See* Dkt. Nos. 31, 32. The Parties signed a joint stipulation of settlement and release. *See* Dkt. No. 38-1 at 36-70. Defendants have agreed to pay up to $282,500.00 to resolve and satisfy any claim for attorneys fees and costs approved by the Court, any and all amounts to be paid to class members, any court-approved enhancement payment to Plaintiffs, all claims administration costs to the claims administrator and the employer's share of payroll taxes including the employer's share of the FICA tax and any federal and state unemployment tax due. *See id.*

On March 7, 2016, the claims administrator, Dahl Administration, LLC, ("Dahl") sent court-approved Spanish and English language notices and claim forms to all 504 class members informing them of their rights under the settlement agreement, including their right to object to the same, and informing them of Class Counsel's intention to seek $90,000 in attorney fees. *See* Dkt. No. 40-3 at ¶¶ 4-6. At the time of the final approval hearing on June 9, 2016, no objections to the class settlement had been received from class members. *See id.* at ¶ 11. As of May 13, 2016, the claims administrator received 248 valid, non-duplicate, claim forms. *See id.* at ¶¶ 12-14. No class member requested exclusion from the class or objected to the settlement. *See id.* at ¶¶ 10, 11.

Plaintiffs seek this Court's approval of the joint stipulation of settlement and release pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. *See* Dkt. No. 40.

### III. DISCUSSION

**A.      Class Certification**

The proposed class meets all of the requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(3).  "[N]umerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995).  Federal Rule of Civil Procedure 23(a)(1) is satisfied because the class size is 504 members, and, thus, joinder is impracticable. *See* Dkt. No. 1 at ¶¶ 70, 80; Dkt. No. 39 at ¶ 11; Dkt. No. 40-3 at ¶ 13.

The proposed class also satisfies Fed. R. Civ. P. 23(a)(2), the commonality requirement. All Class Members share common questions of fact and law concerning Defendants' customs, policies, and practices.  Plaintiff identified several factual questions common among the Class Members.  The first allegation concerns a practice referred to as "Late Starts," which refers to the alleged practice by Defendants of requiring Class Members to be present and to wait for unpaid periods of time before permitting them to start their shift.  *See* Dkt. No. 38-2 at ¶¶ 28-29. Plaintiffs next claim that Class Members were also subject to "Unpaid Rest Periods" whereby they were unpaid for rest periods in violation of the FLSA.  *See id.* at ¶¶ 30-35.  Plaintiffs' final allegation is that Class Members' wages on their paycheck did not always accurately compensate them for the hours actually worked.  *See id.* at ¶¶ 36-39; *see also Jackson v. Bloomberg, L.P.*, *McMahon*, 298 F.R.D. 152, 162-63 (S.D.N.Y. 2014) (finding that the plaintiffs met the commonality requirement where there were common questions of law and fact as to whether the defendant knowingly permitted the class members to work over forty hours per week and failed to pay them overtime and failed to record all their hours that were worked); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 394-95 (N.D.N.Y. 2011) (finding commonality in a policy whereby hourly employees were required to work prior to clocking in without compensation).

Similarly, Plaintiffs satisfy Fed. R. Civ. P. 23(a)(3), typicality, because their claims are

based on the same factual and legal theories as the Class Members' claims.  Typicality

> "is satisfied when each class member's claim arises from the same
> course of events and each class member makes similar legal
> arguments to prove the defendant's liability.  [M]inor variations in
> the fact patterns underlying [the] individual claims" do not preclude
> a finding of typicality.  By contrast, unique defenses that threaten to
> become the focus of the litigation may preclude such a finding.

*Sykes v. Mel Harris and Assoc., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (internal quotation

marks and citations omitted).

Plaintiffs also satisfy Fed. R. Civ. P. 23(a)(4) because they will "fairly and adequately

protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  To determine adequacy, the Court

must inquire as to whether "1) plaintiff's interests are antagonistic to the interest of other members

of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the

litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  In

the present matter, there is no evidence that Plaintiffs' interests are at odds with those of the Class

Members.  The Court further finds that Class Counsel, Teague P. Paterson of the law firm of

Beeson, Tayer & Bodine, APC, are qualified experienced and competent in class action age and

hour litigation.  *See* Dkt. No. 40-2 at ¶¶ 22-27.

In addition to Rule 23(a)'s requirements, Rule 23(b) of the Federal Rules of Civil

Procedure ("Rule 23(b)(3)") requires one of the three alternatives be satisfied for class

certification.  Plaintiffs assert that Rule 23(b)(3) has been satisfied in this case.  That subsection

requires that

> the court finds that questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for fairly and efficiently adjudicating the controversy.  The
> matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the
controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation
of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

The Court finds that the common questions predominate over any individual member's questions and a class action is superior to other methods of adjudicating this controversy because other members of the Class will have little interest in prosecuting separate actions and, for any members who may be so inclined, the potential individual recovery is relatively small in comparison to the cost of litigation. *See id.*; *see also Ceka v. PBM/CMSI Inc.*, 12 Civ. 1711, 2014 WL 6812127, *1 (S.D.N.Y. Dec. 2, 2014) (finding class adjudication will be superior because judicial resources would be conserved, "economies of scale" for class members would be achieved, and repetitive proceedings with potential inconsistencies would be avoided). Here, class-wide proof can serve to answer questions of fact for each class member. *See Hamelin*, 274 F.R.D. at 298. The question of whether Defendants' alleged practices regarding unpaid time and payroll were legal is universal to the claims made by the class members. *See id.* There is no indication in this case that the individual class members need to control the prosecution of their claims. The information provided in the motion papers indicate that the monetary injury of each class member could inhibit class members from retaining attorneys separately due to the cost of maintaining such separate action.[1] *See* Dkt. No. 40-3 at ¶ 15.

**B.     Approval of Settlement**

Rule 23(e) of the Federal Rules of Civil Procedure "requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and

---

[1] The minimum payment to Class Members is $7.64, the median payment is $387.61, and the highest payment is $1,591.90. *See* Dkt. No. 40-3 at ¶ 15.

adequate." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, *2 (E.D.N.Y. Feb. 18, 2011) (citing FED. R. CIV. P. 23(e)). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re Painewebber Ltd. P'ship Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (citation omitted). Moreover, a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted).

### 1. Procedural Fairness

To determine whether a settlement is procedurally fair, courts primarily examine the negotiating process leading to settlement to "ensure that the settlement resulted from arm's-length negotiations, and that Plaintiffs' Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the class's interests." *Ceka*, 2014 WL 6812127, at *1; *see also Wal-Mart Stores, Inc.*, 396 F.3d at 116 (citation omitted). In the present matter, Plaintiffs' counsel met with each of the Plaintiffs on several occasions in addition to two meetings involving Plaintiffs and other members of the putative class. *See* Dkt. No. 38-2 at ¶ 5. Counsel also met with several members of the class to develop evidence in support of their claims. *See id.* at ¶ 11. Pre-mediation discovery was exchanged, including employment policies, handbooks, the total number of putative class action members, and documents and data from the computerized electro-magnetic scanning system for every seventh employee, as well as the payroll data corresponding to each of those employees. *See id.* at ¶¶ 8, 14. The information was reviewed and converted into usable data by Plaintiffs' Counsel. *See id.* at ¶ 16. A professional, court-approved mediator, known to both parties to be an experienced mediator and arbiter of labor law cases, was selected to conduct the mediation. *See id.* at ¶ 12. Mediation briefs were

prepared, and a full day of mediation was conducted on November 16, 2015 with Plaintiffs and Defendants present. *See id.* at ¶¶ 13, 17, 18. The mediation continued into the evening, but the parties were able to reach a settlement. *See id.* at ¶ 18. Where, as here, a settlement is negotiated at arm's length by experienced, informed counsel, there is a presumption that it is fair and reasonable. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 106, n.12). Based on the evidence before the Court, as well as counsels' representations at the June 9, 2016 hearing, the Court finds that the settlement process was procedurally fair and not the product of undue influence or collusion.

### 2. Substantive Fairness

To determine if a settlement is substantively fair, courts consider (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323-24 (2d Cir. 1990) (citation omitted). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).

In the present matter, the factors weigh in favor of the settlement. Generally, class actions

are complex and consume a tremendous amount of time and resources.  *See Ebbert v. Nassau County*, No. CV 05-5445, 2011 WL 6826121, *9 (S.D.N.Y. Dec. 22, 2011) (citation omitted).  Here, significant discovery and statistical experts would be required followed by a fact-intensive trial.  Preparing and presenting evidence to support Plaintiffs' position would consume tremendous time and financial resources.  The first factor set out in *Grinnell* weighs in favor of final approval.

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. . . .  In fact, the lack of objections may well evidence the fairness of the [s]ettlement."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)).  In the present matter, no objections had been filed to the settlement agreement up until the time of the hearing on June 9, 2016, and no Class Members appeared at the hearing.  As such, the second *Grinnell* factor weighs in favor of final approval.

The parties exchanged initial discovery and also engaged in pre-mediation discovery whereby Defendants provided Plaintiffs with over 1500 pages of data.  This information included employment policies and handbooks, the total number of putative class action members, and documents and data from the computerized electro-magnetic scanning system for every seventh employee, as well as the payroll data corresponding to each of those employees.  The Court finds that Plaintiffs' Counsel conducted a diligent factual investigation and obtained sufficient disclosures from Defendants.  As such, the Court finds that the third *Grinnell* weighs in favor of final approval.

With respect to the fourth factor, the Court finds that establishing liability would be a time-consuming and costly process, including statistical analysis of thousands of time entries for

504 Class Members. Defendants have asserted factual and legal defenses in this action, which Plaintiffs acknowledge could be successful. *See* Dkt. No. 38-2 at ¶¶ 40-42. As such, the Court finds that the fourth *Grinnell* factor weighs in favor of liability. Likewise, a calculation of damages at trial would require statistical analysis by an expert. Some unpaid wage allegations are based on the contentions of the Class Members and are not explicitly reflected in the electronic records. After examining the data, Plaintiffs' counsel total calculation of unpaid wages is $137,993. There is potential exposure for liquidated damages (an amount potentially equal to the unpaid wages), but Defendants have asserted an affirmative defense of good faith with respect to the liquidated damages. *See* Dkt. No. 38-2 at ¶ 37. Therefore, the fifth *Grinnell* factor also weights in favor of final approval.

As to the sixth factor, the Court finds that there is little risk that Plaintiffs would be unable to maintain the class action through trial and, therefore, this factor is neutral. The seventh factor, whether Defendants could withstand a greater judgment, does not suggest that the settlement is unfair. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178, n.9 (S.D.N.Y. 2000) (citing *In re Painewebber Ltd. P'ships Lit.*, 171 F.R.D. at 129). Here, there is nothing in the records to indicate whether Defendants could withstand greater judgment, but, if such proof was submitted, the Court would still find settlement of this action to be appropriate in consideration of the other *Grinnell* factors. Finally, the eighth and ninth factors also weigh in favor of the final approval. As set forth above, the proposed net settlement fund of $168,276 – in light of the best possible recovery as well as in light of all the attendant risks of litigation – is reasonable. The record indicates that, pursuant to the terms of the settlement agreement, the monetary value of the settlement payments available to the Class Members is significant and adequate. Moreover, by ensuring at least 80% of the settlement fund is paid out to Class

Members regardless of participation, the Parties have ensured that the settlement provides a significant and proportional payment.

Having weighed these factors, the Court grants the parties request for final approval of the settlement.

## C.    Approval of Service Awards

The Court hereby approves Plaintiffs' service awards and finds that they are reasonable and proper.  Service awards are common in class-action cases because they are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiff."  *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, *9 (E.D.N.Y. Jan. 20, 2010) (awarding $15,000 service awards each to five named plaintiffs and $10,000 service awards each to ten other named plaintiffs); *Dupler* v. *Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (finding enhancement awards of $25,000 to one plaintiff and $5,000 to a second plaintiff reasonably based on the participation of the two individuals in the action to date).

Here, Plaintiffs request modest service awards in the amount of $1,500 per Plaintiff and the record establishes that the Plaintiffs actively participated in the litigation.  The  amounts requested are reasonable in light of the time and effort expended by the class  representatives, were the result of arm's-length negotiation, *see* Dkt. No. 40-2 at ¶¶ 19-21, and are well below amounts awarded in the Second Circuit.  *See, e.g.*, *Fears v. Wilhelmina Model Agency, Inc*., No. 02 Civ. 4911, 2005 WL 1041134, *3 (S.D.N.Y. May 5, 2005) (collecting cases illustrating a range of incentive awards and approving an award of $25,000).

Accordingly, each of the Plaintiff Representatives shall be awarded $1,500 each  from the

gross settlement fund in addition to their claims as class members.

**D.    Dissemination of Notice**

The Court previously approved, as to form and content, the Notice of Class Action Settlement and Final Approval Hearing and Claim Form, attached as Exhibit A to the Affidavit of Kelly Kratz, which was properly mailed to the Class as directed by the Court's Preliminary Approval Order. *See* Dkt. No. 40-3 at ¶¶ 4-9, Exh. A.   The content of the Notice sent to the Class complied with the Court's prior Order and with due process and Federal Rules of Civil Procedure.   Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), a notice must provide the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.   The notice must concisely and clearly state, in plain, easily understood language the nature of the action, the definition of the Class certified, the Class claims, issues, or defenses.   *See* FED. R. CIV. P. 23(c)(2)(B).   The notice must also state that a class member may enter an appearance through counsel if the member so desires, that the Court will exclude from the Class any member who requests exclusion,  stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3).  *See id.*

Pursuant to this Court's preliminary approval order, FLSA notices were translated into Spanish and distributed to 504 putative class members, in English and Spanish, using a mailing list which the Claims Administrator created using contact information provided by Defendants. *See* Dkt. No. 40-3 at ¶ 4.   The Court finds that the notice sent to class members satisfies each of these requirements by describing in plain language the terms of the settlement, informs the class members about the allocation of attorney fees, Plaintiffs' enhancements, and costs, and provides specific information regarding the date, time, and place of the final approval hearing. *See, e.g.*, *In*

*re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (stating that class

notice "need only describe the terms of the settlement generally").

The Court finds that the Notice of Release and Waiver of Claims is sufficient to appraise

the Class of the rights and release of claims. Such release, which becomes effective upon entry

of this Order with respect to the Class, as herein defined is as follows:

> By operation of the entry of the Judgment and Final Approval,
> Plaintiffs and each individual FLSA Class Member and any NY
> Class Member who does not opt-out of the Settlement as provided in
> this Agreement, forever and fully releases Released Parties from all
> claims asserted in the Class/Collective Action Complaint, or which
> could have been asserted in the Class/Collective Action Complaint
> filed in the action styled *Juan Ramon Marroquin Alas, et al. v.*
> *Champlain Valley Specialty of New York, Inc.*, No. 5:15-cv-441,
> pending in the United States District Court for the Northern District
> of New York, whether known or unknown, from April 12, 2009
> through the date of the Order Granting Final Approval of the
> Settlement and all related wage and hour claims under any state or
> local law whether known or unknown, through the date of the Order
> Granting Final Approval of the Settlement ("Released Claims").
> The Released Claims include all New York Labor Law and Fair Labor Standards
> Act claims, and wage claims under all related or corresponding federal or state
> laws, and all implementing regulations and interpreting guidance, for retaliation,
> unpaid wages, including claims for unpaid overtime wages, unpaid regular wages,
> unpaid minimum wages, for interest on such claims, claims for liquidated
> damages, for meal and rest period premiums, penalties, for wage statement
> penalties and for attorneys' fees and costs related to such claims.

The Court confirms Dahl Administration, LLC, as the Claims Administrator. The Court

further orders payment of the administrator's fees, in the amount of $8,720 to the Claims

Administrator as its fees for services from the settlement fund.

**E.     Final Approval of the FLSA Settlement**

The Court hereby approves the FLSA settlement. Because a potential plaintiff's failure to

opt into a FLSA collective action does not prejudice her ability to bring a suit in their own name

at a later time, certification of FLSA collective actions do not implicate the same due process

considerations that are present in class actions filed pursuant to Federal Rule 23 of Civil Procedure. *Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 RLE, 2011 WL 4599822, *6 (S.D.N.Y. Aug. 16, 2011) (*citing McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)). Therefore, the standards applied to FLSA settlements are less stringent than those applied to class actions brought under Rule 23 and courts may approve a FLSA settlement that is reached as a result of "contested litigation to resolve bona fide disputes." *Id.* (citations omitted). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). This litigation resulted from contested arm's length negotiations between the parties. The settlement followed a significant amount of back and forth between named Plaintiffs and Defendants, as well as an exchange of documents and analysis of time records and other information. The settlement also resolves a clear and genuine dispute regarding wages owed pursuant to the FLSA and the Labor Law. The FLSA settlement is finally approved.

**F.    Award of Attorney Fees and Costs to Class Counsel**

The Court hereby grants Plaintiffs' Motion for Attorney Fees and awards to Class Counsel in the following amounts: $90,000 in attorney fees and $6,504 in costs. On February 8, 2016, the Court appointed Teague P. Paterson and his firm Beeson, Tayer & Bodine, APC, as Class Counsel because they met the requirements of Federal Rule of Civil Procedure 23(g). The work that Class Counsel has performed both in litigating and settling this case, and the resources committed to date, demonstrate their skill and commitment to representing the Class Members' interests. The courts of the Second Circuit tend to evaluate requests for attorney fees using the "percentage of the fund method." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481 (S.D.N.Y. April 29, 2013); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 121. Courts evaluate the

reasonableness of a fees request by applying the following criteria:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Taking these factors into consideration, the Court finds that Class Counsel's request for 31.8% of the gross settlement Fund plus costs and expenses is reasonable.

The Settlement Agreement, preliminarily approved by the Court, specifies that "Settlement Counsel shall petition the Court for no more than $90,000.00 of the Settlement Payment as an award of attorneys' fees and $10,000.00 of the Settlement Payment as an award for costs." Dkt. No. 40-2 at 31. Similarly, the court-approved Notice of Collective Class Action Settlement to class members specifies: "Defendants have agreed to settle the underlying class and collective claims in exchange for a Gross Settlement Amount of $282,500.00. This amount is inclusive of: . . . (5) Class Counsel's fees and costs in the amount of $100,000." Dkt. No. 40-3 at 10. Not a single Class Member has objected to the terms of the Settlement Agreement or to Class Counsel's request for attorney fees and costs. *See id.* at ¶ 11. The absence of objections is itself an indicator of the fairness of the settlement terms. *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, *9 (S.D.N.Y. Sept. 16, 2011).

Class Counsel has expended significant time and labor to obtain this $282,500.00 settlement. Prior to filing the complaint in this matter, Class Counsel met with Plaintiffs and other putative class members on multiple occasions, performed legal and factual research into the merits of Plaintiffs' claims, Defendants, and Defendants' assets, interviewed Plaintiffs, drafted and filed the Complaint and continued to communicate and engage with Plaintiffs leading up to the early stages of discovery. Class Counsel propounded and responded to discovery requests of the

Defendants, participated in requisite case management conferences, continued to meet with putative class members to conduct fact investigation, developed evidence in support of the class claims, and prepared for filing a motion for conditional certification of the FLSA class.

In preparation for court ordered mediation, Class Counsel expended significant time analyzing and reviewing documentation provided by Defendants. Thereafter, Class Counsel participated in a full day mediation session with a court-approved mediator and prepared and filed with the Court Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Preparation of the Motion required Class Counsel to prepare the necessary pleadings and filings in support of the motion. Class Counsel expended approximately 481 hours litigating this matter. These hours were calculated using contemporaneous time records maintained by the attorneys who expended time and labor on this litigation and reflect Class Counsel's efforts to avoid duplication of work. *See* Dkt. No. 40-2 at ¶ 46. The Court has reviewed such time sheets and finds the time expended reasonable. This factor supports an award of the requested attorney fees.

The magnitude and complexity of the issues raised in this litigation and the inherent risks of this litigation support an award of attorney fees. Courts considering a motion for final approval of settlement agreement weigh the difficulty of the issues presented by the litigation when deciding whether to award attorney fees. *Goldberger*, 209 F.3d at 50. Likewise, the risks inherent in litigating wage and hour claims, including the uncertainty of recovery, is relevant to an assessment of whether a fee award is reasonable. *See Grinnell,* 495 F.2d at 470. FLSA actions such as this "typically involve complex mixed questions of fact and law[.] These statutory questions must be resolved in the light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Ark.-Best Freight Sys.,*

*Inc.,* 450 U.S. 728, 743 (1981). Plaintiffs' allegations of compensable late starts, unpaid rest periods, and time shaving turn on mixed questions of law and fact. Defendants, in turn, dispute several of Plaintiffs' factual assertions including Plaintiffs' claims. If required to proceed to litigation on the merits of their claims, Plaintiffs could face the risk that Defendants would move for decertification of the Class pursuant to Section 216(b) of the FLSA which would require Plaintiffs to engage in extensive briefing and additional investment of time and resources. Moreover, Class Counsel undertook representation of the Class on a wholly contingent basis, thereby facing significant risk of non-recovery and have not received any compensation for services rendered in this litigation. This factor supports a fee award.

Class Counsel's high quality representation supports Plaintiffs' request for attorney fees. "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (citation omitted). Here, Class Counsel is experienced in wage and hour litigation and class actions, exercised due diligence prior to filing this lawsuit, and has actively litigated the case since its inception. Class Counsel has also committed significant resources to the vigorous prosecution of this matter to promote the interests of Plaintiffs and the putative Class Members which enabled Plaintiffs to achieve a settlement amount of $282,500.00.

An evaluation of the requested attorney fees in relation to the total settlement fund weighs in favor of final approval. The request for attorney fees and costs is reasonable when evaluated in relation to the total settlement amount. As a percentage of the total settlement fund, Plaintiffs' request for an award of $90,000 in fees consists of 32% of the gross settlement fund and is well within the range of reasonableness accepted by the courts of the Second Circuit. *See, e.g.,*

*KeyBank, N.A.*, 293 F.R.D. at 481 (finding that the class counsel's request of 33% of the $4.9 million settlement is "consistent with the norms of class litigation in this circuit"); *Willix*, 2011 WL 754862, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and and Labor Law wage and hour action); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA wage and hour case); *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129, *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit); *Johnson*, 2011 WL 4357376, at *19 (awarding 33% of recovery). Nor does this award constitute a windfall to Class Counsel.

Public policy considerations weigh in favor of an award of fees. When evaluating the reasonableness of a fee award, courts weigh the public benefit of the litigation "and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). To achieve their remedial purpose, the FLSA and the Labor Law must provide adequate compensation to attorneys who advance the rights of the workers they represent. Here, the relatively low value of the putative Class Members' individual claims would have made their litigation on an individual basis cost prohibitive. By participating in this litigation, Class Members are able to recover wages which they would not be able to recover by other means and litigating their claims on a contingency fee basis is therefore an efficient mechanism for vindicating the rights established by the FLSA and the Labor Law. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 (1980). This factor supports an award of the requested attorney fees.

Plaintiffs' request for $90,000 in attorney fees is reasonable under a loadstar crosscheck analysis. In this case, the hours actually expended by Class Counsel in this litigation equals 481

hours.  These hours are based on the contemporaneous time records kept by Class Counsel and were reviewed by Class Counsel for accuracy.  Class Counsel seeks $90,000 in fees, which provides an effective hourly rate of approximately $187 per hour.  The record establishes that his hourly rate will diminish over time because Class Counsel will expend additional hours of time after final approval of the settlement agreement to ensure that settlement payments are properly distributed.  *See* Dkt. No. 40-2 at ¶¶ 46, 49-50.  The fact that counsel is not asking the Court to apply a multiplier to enhance the fee award, or reimburse Class Counsel for time expended by support staff is further evidence of the reasonableness of the fee request.  Additionally, the effective hourly rate is also well within the limits of hourly rates that have been approved in the Second Circuit.  *See, e.g., Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015) (awarding hourly rates ranging from $250 to $450); *McGlone v. Contract Callers Inc.*, No. 11 Civ. 3004, 2015 WL 7695145, *3 (S.D.N.Y. Nov. 29, 2015) (citing cases awarding hourly rates ranging $125 to $350); *Carrasco v. W. Vill. Ritz Corp.,* No. 11 Civ. 7843, 2012 WL 2814112, *7 (S.D.N.Y. July 11, 2012) (approving hourly rate of $250); *Santillan v. Henao*, 822 F. Supp. 2d 284, 300 (E.D.N.Y. 2011) (approving hourly rates of $250 and $375); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007) (approving hourly rates of $150 and $250).

Class Counsel requests reimbursement of expenses in the amount of $6,504 to be paid from the Fund.  It is well settled that attorneys may be compensated for reasonable expenses paid out-of-pocket which are necessary and incidental to their representation of the class.  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).  In this case, Class Counsel's actual costs in the amount of $6,504, which includes a reasonable estimation of $250 in additional costs incurred following submission of their final approval motion.  Such costs were necessary and incidental to the representation of the Class throughout this litigation

and include fees paid to the Court, process server, transportation, electronic legal research, and Plaintiffs' portion of the mediator fees, among other items. In addition to this amount, the Settlement Agreement provided that Class Counsel was to pay the Claims Administrator's fees from the settlement fund, which was preliminarily approved by the Court. The Claims Administrator was selected through a competitive bidding process. *See* Dkt. No. 40-2 at ¶ 52. The Claims Administrator's expenses are awarded in the amount indicated in its invoice ($ 8,720). *See id.* at 66.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiffs' submissions, and the applicable law and, after conducting a final approval class action settlement hearing on June 9, 2016, and, for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' unopposed motion for final approval of class action settlement, certification of settlement class, approval of the FLSA settlement, and award of attorney fees and costs is **GRANTED**; and the Court further

**ORDERS** that the class is certified, as described in this Memorandum-Decision and Order, and consisting of all persons who were/are employed by Champlain Valley Specialty of New York, Inc., as hourly food processing employees at its apple-slice processing facility in Oswego, New York, and/or in similar positions for the period of April 18, 2009, to the date of this Order; and the Court further

**ORDERS** that the Class Administrator provided adequate notice and Class Members had adequate opportunity to opt-out; and the Court further

**ORDERS** that any Class Members who have not opted out by the date of this order are bound by the Joint Stipulation of Settlement and Release entered into by the parties to this

action; and the Court further

**ORDERS** that Plaintiffs' request for attorney fees in the amount of $90,000 and costs in the amount of $6,504 is **GRANTED**; and the Court further

**ORDERS** that the claims administration expenses are to be paid to Dahl Administrators in the amount of $8,720; and the Court further

**ORDERS** that payment to Class Members who have submitted claims forms are to be paid in the amounts determined by the Claims Administrator in accordance with the Joint Stipulation of Settlement and Release entered into by the parties to this action; and the Court further

**ORDERS** that payment of $1500, as a Plaintiffs' enhancement, is to be paid to each of the named Plaintiffs and Class Representatives to this action; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 17, 2016
     Albany, New York

Mae A. D'Agostino
U.S. District Judge